| í WILLIAMS, Judge.
The defendant, Jerry D. Brown, was charged by grand jury indictment with second degree murder, a violation of LSA-R.S. 14:30.1. After a jury trial, the defendant was found guilty as charged. The trial court imposed the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant’s motions for post-verdict judgment of acquittal and new trial were denied. The defendant appeals his conviction. For the following reasons, we affirm.
FACTS
On June 16, 1995, the victim, Bruce Moore, was driving a brown Buiek on Flora Avenue in Shreveport when defendant gestured for him to stop. The two men talked briefly at the vehicle and the volume of their voices became louder. Moore exited his automobile and the two men moved toward the rear of the vehicle. According to several witnesses, defendant then pointed a revolver at the victim’s head. Some of the witnesses heard the victim pleading “don’t kill me” or words to that effect. The defendant shot the victim once in the left side of the head at pointblank range, mortally wounding Bruce Moore. Defendant reached into the victim’s car, removed a brown paper bag and walked away from the scene still holding the handgun.
Shreveport police officers were dispatched to the scene of the shooting. Upon their arrival, they observed EMS personnel placing the victim into an ambulance for transport to LSU Medical Center, where Moore later died as a result of his injury. Shreveport Police Detective Larry Cunningham worked in the homicide division and was placed in charge of the murder investigation. After arriving at the crime scene, Cunningham inspected the area around the car, but did not find any type of weapon.
During their investigation, police were told that the shooting suspect had |?been recently arrested. Based on this information and witness descriptions of the shooter, a photographic lineup was assembled. This lineup was shown to Helen Williams, a witness, who said that the suspected shooter was not pictured in that array. After gathering more information about the suspect’s identity, Cunningham prepared a second photo lineup, which included defendant’s photograph as subject number five. This second lineup was shown to Williams and another witness, Carol Willis, both of whom identified defendant’s photograph as that of the individual who had shot the victim. Approximately four months after the date of the killing, the defendant was arrested and charged with second degree murder.
Following the trial, the jury found the defendant guilty as charged. The trial court denied defendant’s motions for post-verdict judgment of acquittal and new trial, and imposed the mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence. Defendant appeals his conviction.
DISCUSSION
The defendant contends the trial court erred in denying his motion for post-verdict judgment of acquittal. Defendant argues that the state failed to produce sufficient evidence to support the conviction of second degree murder.
*672 Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (La.1992). This court’s authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. |3La. Const, art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
LSA-C.Cr.P. art. 821 provides that a post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. Article 821 manifests the intent to adopt the standard of Jackson v. Virginia as the proper degree of deference which both trial and appellate courts owe to the jury’s verdict. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1. To support a conviction of second degree murder, the prosecution must prove beyond a reasonable doubt that the defendant killed a person and possessed such an intent. State v. Thompson, 27,512 (La.App.2d Cir.12/6/95), 665 So.2d 643.
Specific intent is that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act. LSA-R.S. 14:10; State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990). Specific intent is a state of mind and need not be proven as a fact, but may be inferred from the circumstances of the event and the actions Of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.), writ denied, 544 So.2d 398 (La.1989). The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Johnson, 27,522 (La.App.2d Cir.12/6/95), 665 So.2d 1237.
| Jn the present case, Dr. George McCormick, the Caddo Parish Coroner, testified that the bullet entered the victim’s head just above the left ear and exited through the back of his skull. Dr. McCormick opined that the victim died because he had been shot once in the left side of the head and that the wound was not survivable due to the large amount of brain tissue destroyed by the bullet.
Ora Fuller, a resident of Flora Avenue at the time of the homicide, testified that she knew both the defendant and the vic-tipi prior to the crime. Fuller stated that while walking home from work the day of the shooting, she had passed by defendant, who was standing outside the house next to her residence. A short time after entering her house, Fuller heard a gunshot, went to her front door and out onto the porch. Fuller testified that after she heard someone say “Call 911, Jerry just shot that man,” she telephoned 911 and reported the shooting. Fuller stated that after calling the police, she walked over to the victim, who was unable to get up from the ground, and remained there until EMS personnel arrived. Fuller testified that during this time, she did not see any type *673 of weapon and that no one removed anything from the victim’s person.
Fuller stated that she later viewed a photographic lineup provided by the police and had identified defendant, who was photo number five, as the man she had seen standing outside the house next door prior to the shooting. During cross examination, Fuller responded that she had not named defendant as the shooter when she telephoned the police because she had not seen the actual shooting.
Carol Willis, a resident of Flora Avenue on the date of the shooting, testified that she did not personally know defendant, but had seen him in the neighborhood several times previously. Willis stated that she was sitting on her porch when she saw defendant call to the victim as he was driving down the street in the brown vehicle. After the victim stopped, defendant approached the vehicle and the two men began arguing loudly. Willis testified that their behavior alarmed | dier because there had been several prior shootings in the area and so she entered her home to get a cordless telephone.
Willis testified that as she returned to her doorway facing the street, she saw defendant extend his right arm while holding a gun and shoot the victim, who collapsed behind his vehicle. Willis stated the victim had not done anything to indicate he was going to use a gun and that she had not seen anything near his person that looked like a weapon. After defendant fired the shot, he reached into the driver’s side of the automobile, removed a brown bag and left the scene through an alley. Willis testified that she later viewed a photographic lineup and identified subject number five, the defendant, as the man who shot the victim.
Defense counsel attempted to impeach her testimony by asking Willis to read a portion of Officer Paul Webb’s police report, which quoted her as saying that she did not know who fired the shot and did not see the actual shooting. Willis said she did not remember speaking with the officer or making such a statement, explaining that she became emotional and physically ill after witnessing the shooting.
During redirect examination by the prosecutor, Willis pointed out that the police report incorrectly listed her address and identified her as naming the defendant as the shooter in her 911 phone call. However, Willis remembered giving a description, but not the name, of the suspect when she telephoned. This statement is consistent with her earlier testimony that she did not know the shooter’s name at the time. The police report also stated that the witness saw the suspect standing on the left side of the vehicle holding a large gun in one hand. In addition, the alleged discrepancy could be explained by the officer’s mistaken assumption that Willis did not know the shooter’s identity because she did not know his name.
Another witness, Helen Williams, was also a resident of Flora Avenue at lathe time of this homicide. Williams testified that while she was standing under a fig tree in her yard, she saw defendant waving to get the attention of the victim, who was driving past in a brown vehicle. The victim then turned around and stopped the vehicle as the defendant walked over and opened the driver’s door. Williams stated that the victim exited the automobile, stepped toward the rear and asked another person nearby to call 911. Williams testified that the defendant had approached the vehicle with a gun in his hand, that the victim said “Please don’t kill me,” and that defendant then shot the victim in the head. Williams stated that she was shown a photographic lineup by the police and that she identified the defendant’s photograph as that of the shooter. On cross examination, defense counsel asked questions demonstrating that Williams’ trial testimony that she was outside under a fig tree at the time of the shooting was not consistent with her previous statements to police that she had been standing at her door.
*674 In his brief, defendant seems to argue that this inconsistency renders the testimony of the witness unreliable. First, we note that defendant’s assertion that Cunningham wrote a report in June 1995 stating that Williams said she was at her back door is inaccurate. The June 19, 1995 document is a transcript of the recorded statement of Williams, not a report written by Cunningham. Williams stated that she was standing “in my door back there,” indicating that her residence was set back from the other houses on the street. Photographs introduced into evidence depict a fig tree near the residence of Williams. In any event, the record demonstrates that Williams consistently stated before and during trial that she was able to observe the shooting from her position, and the evidence does not contradict her testimony. Defendant’s argument lacks merit.
Defendant also contends there is no evidence that he intended to kill or inflict great bodily harm upon the victim until after the argument ensued, apparently arguing that the killing was committed in sudden passion so as to |7constitute manslaughter. See LSA-R.S. 14:31. However, Williams stated that the defendant was carrying the weapon when he initially approached the victim’s automobile. Additionally, the only reported interaction between the men just prior to the shooting was a brief and loud exchange of words. Thus, the testimony presented does not indicate any provocation by the victim that would have been sufficient to deprive an average person of his self-control. Based upon this record, the jury reasonably could have determined that defendant failed to establish that he acted in sudden passion and was entitled to a manslaughter verdict.
Although there were slight discrepancies in the witness accounts of the events surrounding the shooting, their statements were consistent concerning the material and relevant facts of the homicide. The jury heard the testimony and weighed the credibility of the witnesses. Viewing the evidenee in the light most favorable to the prosecution, we conclude that rational jurors could have found that each of the essential elements of the crime of second degree murder were proven beyond a reasonable doubt. Thus, the trial court did not err in denying defendant’s motion for post-verdict judgment of acquittal. The assignment of error lacks merit.
Pursuant to LSA-C.Cr.P. art. 920(2), we have reviewed the record for error patent and found none. The defendant’s conviction and sentence are affirmed.
AFFIRMED.