BROWN, C.J.
| T Defendant, Patrick L. Carmack, was convicted of the second degree murder of his 15-year-old stepdaughter and was sentenced to life imprisonment without benefit. For the reasons set forth below, defendant’s conviction and sentence are affirmed.

Facts

On September 25, 2000, defendant and his wife, Deon Harvey, had been arguing throughout the day. At approximately 2:00 in the afternoon, Deon had threatened to move out and take her two daughters and the couple’s young son. Deon testified that defendant left the house twice that day, for a couple of hours each time, but he came back each time he left. She went to bed, and defendant returned home around 10:00 that night to continue their argument about her intention to leave. Deon stated that she got out of bed and went to her daughters’ room to tell them to pack because she wanted to leave that night. She testified that she grabbed some clothes out of her bedroom, then walked to the kitchen, which is where defendant stabbed her in the back. Deon fell to her knees and called for her daughters to come help her. Both girls rushed to the kitchen, “begging, please, please don’t kill our mama.” Deon testified that defendant used a black handled kitchen knife to stab her. She was unarmed and unable to fight back.
Deon’s two daughters heard their mom and defendant fighting in the kitchen. They ran to help and tried to stop defendant from cutting their mother. The eldest daughter testified that she and her sister tried to go to a neighbor’s house to call the police, but defendant prevented them from leaving. The eldest daughter did manage to get away and run to a 12neighbor’s house for help. The couple’s nine-year-old son testified that he woke to “screaming and hollering” and walked into the kitchen to see his mother lying on the floor. He also saw defendant cut his sister “around her neck.” He stated that defendant then began stabbing his mother again before taking off his shirt, grabbing a towel, and leaving in Deon’s new car, a GMC Jimmy.
Deon’s youngest daughter was found near the front door of the home. The autopsy revealed that she died of a blood hemorrhage after receiving a deep stab wound at the base of her neck. She had another stab wound that entered through the top of her left ear and went into the base of her skull causing a skull fracture. She also had a “small cut consistent with a defense wound” on her left wrist. The coroner testified that the victim could have lived “as much as five minutes or so” after receiving the fatal blow. The state introduced photographs of the crime scene and the victim’s body into evidence along with *605 photographs and pieces of a broken knife. Corporal Tommy Rachal of the Crime Scene Investigation unit concluded that the knife was the murder weapon. Deon Harvey identified the knife as the one used by defendant to stab her.
Jasper Woods testified that his sister was married to defendant’s uncle. Woods stated that he also considered defendant to be a friend. On the night of September 25, 2000, defendant drove to his uncle’s house. Woods and other relatives were gathered at the uncle’s home. Woods observed that defendant was shirtless and wearing stained pants. Woods could tell that something was wrong, so he invited defendant to his house, | .¡offering him a place to “sit down and talk.” Defendant told him that he “might have cut his wife and maybe one of the kids but he didn’t know for sure what had happened-” Woods testified that defendant left his clothes and vehicle at Woods’ home and that he loaned defendant some clothes and his car. Woods stated that he didn’t know until later that night that defendant had stabbed Deon’s daughter.
Detective Lane Smith testified that while he was gathering evidence at the scene, witnesses informed him that they had seen defendant ride by in his cousin’s car. A “be on the lookout” was issued for the cousin’s vehicle, which was a green Ford Mustang. Defendant was taken into custody at a traffic stop later that night.
In his closing argument, defense counsel argued that the killing had been manslaughter and that Deon had attacked defendant with a pair of scissors. Following deliberations, the jury found defendant guilty as charged of second degree murder. Defendant was sentenced to life imprisonment without benefit.

Discussion

Defendant contends that the evidence was insufficient to support the jury’s verdict. According to defendant, the state failed to prove that he possessed the requisite specific intent to kill or inflict great bodily harm. Defendant claims that even if the state had proven specific intent, then he was guilty “only of manslaughter” because he was acting “in a sudden passion.” In support, defendant calls attention to the 16-year-long abusive relationship between himself and his wife, Deon’s threats to leave him that | ¿day, the fact that she had left him twice before and returned, and “evidence that Deon had often used instruments to strike him” in the past. It is defendant’s position that “he clearly lost his reason after eight hours of his wife threatening to leave and [then] not leaving.” In support, defendant relies upon his statement to Jasper Woods and his appearance that night as described by Woods as proof that the killing happened in the heat of passion.
Second degree murder is the killing of a human being when the offender has a specific intent 'to kill or to inflict great bodily harm. La. R.S. 14:30.1. Manslaughter is a homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed. La. R.S. 14:31.
The proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the *606 crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The Jackson standard is applicable | fiin cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
This court’s authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidenee evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const, art. V, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a judge’s or jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.08/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, 02-3090 (La.11/14/03), 858 So.2d 422. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.05/08/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, 98-0282 (La.06/26/98), 719 So.2d 1048.
|fiThe evidence, when viewed in the light most favorable to the prosecution, is sufficient to support the jury’s verdict of second degree murder. Defendant and his wife fought earlier in the day; he left and returned to the family home several times before waking his wife at 10:00 p.m. to continue their argument. When Deon Harvey roused both of her daughters and told them to pack, defendant told them that he would leave instead. He then attacked Deon with a knife as she prepared to depart the house.
Both girls heard their mother’s screams and ran to the kitchen to help her. Defendant stood up and “drew the knife on them and told them to shut up” before he resumed stabbing Deon. Ms. Harvey testified that she got up to see where her daughters were when defendant “realized that one of the girls had got out to try to go get help.” The eldest daughter testified that when she and her sister tried to run to call the police, defendant pulled them both back into the house. That was the last time she saw her sister. Defendant’s son testified that he saw his father cutting his sister “around her neck” in the living room. He stated that he later watched his father finish stabbing his mother, then take off his shirt, pick up a towel, and leave in Deon’s car. Jasper Woods testified that defendant arrived at his uncle’s house shirtless wearing stained pants. Defendant admitted to Woods that he cut his wife and possibly one of the children. Then defendant borrowed clothes and a car under the pretense of returning to the scene. Defendant was apprehended at a traffic stop in the borrowed car.
|7The victim’s body was found by the front door of the home, and the evidence introduced from the crime scene supports *607 the testimony of the state’s witnesses. Defendant and Deon argued for almost eight hours before he attacked her with a knife. In fact, he left the house and returned several times before waking her up to argue again. After unsuccessfully attempting to intervene in defendant’s attack on their mother, the stepdaughters were prevented from leaving to call for help by defendant, who then stabbed the youngest stepdaughter in the neck as she continued to try to escape. The jury could have reasonably found that defendant possessed the requisite intent to murder, and although he acted passionately, it was not such as to reduce the crime to manslaughter. This assignment of error is meritless.

Conclusion

For the reasons set forth above, defendant’s conviction and sentence are AFFIRMED.