997 So.2d 681 (2008)
STATE of Louisiana, Appellee
v.
Patrick Oneal ADAMS, Appellant.
No. 43,616-KA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 2008.
*683 Louisiana Appellate Project, by G. Paul Marx, Lafayette, for Appellant.
Don M. Burkett, District Attorney, Michael E. Daniel, Richard Z. Johnson, Jr., Assistant District Attorneys, for Appellee.
Before STEWART, DREW and MOORE, JJ. STEWART, J.
STEWART, J.
The defendant, Patrick Oneal Adams, was convicted of Distribution of a Controlled Dangerous Substance (crack cocaine), a violation of Louisiana Revised Statute 40:967(A)(1). He was sentenced to ten years at hard labor with credit for time served. The defendant now appeals. For the following reasons, we affirm the defendant's conviction and sentence.

FACTS
This case involves a controlled buy of crack cocaine from the defendant by a confidential informant who was wearing hidden audio and video devices. The transaction was recorded, but the defendant's face cannot be seen on the video. Ultimately, the identification of the defendant was dependent on the informant's testimony.
The State's first witness was Michael Jerome Pitts. He testified that on February 14, 2007, he worked with a Sergeant Banta in an operation in Logansport, Louisiana. The operation started when Banta equipped Pitts with video and audio devices at the Logansport police substation. Banta also searched Pitts' vehicle and person for contraband and weapons. Pitts indicated he had worked with Banta in an undercover capacity probably in over 40 cases, and was paid $100 per day regardless of how many cases he made.
Pitts was told to go to the Seasons Apartments and "different areas in that Logansport area." He was given $100. He stated he met the defendant at the corner of Jacqueline Street and Crawford Street, and he did not know the defendant prior to this purchase. Pitts then identified the defendant in the courtroom. According to Pitts, the defendant had been standing with some other individuals who had a fire built. The defendant got into the vehicle with him after flagging Pitts *684 down and asking Pitts if he was looking to buy drugs. The defendant told Pitts he would get Pitts two twenty-dollar rocks. Then, the defendant instructed Pitts to go to the Seasons Apartments. Pitts agreed, but did not want to give the defendant the money at that time. The defendant left his driver's license as a form of security for the $40 Pitts had given him to purchase the two rocks of crack cocaine. Pitts testified that the license was issued to Patrick Adams, that the picture on the license appeared to be the same person who was in the vehicle with him, and that there was no doubt that it was the defendant's license.
After examining the driver's license, Pitts gave the money to the defendant. The defendant then instructed Pitts to go to a truck stop, wait a few minutes, and then come back. Pitts went to the truck stop, read from the license onto the video, and then returned. The defendant came out, got into Pitts' vehicle, and handed Pitts two rocks of crack cocaine. Pitts returned the license and dropped the defendant off where he had originally picked him up. After dropping the defendant off, Pitts bagged the crack cocaine into evidence and returned to the substation.
Pursuant to Pitts' testimony, both the cocaine and the video from the operation were introduced into evidence without objection. Both were shown to the jury.
On cross-examination, Pitts explained how he first became acquainted with Sergeant Banta through the Shelby County Sheriff's Department where Pitts had done some narcotics work. He admitted to having a charge of theft by check in that county and perhaps an assault charge. However, he stated that he had not been convicted and had no pending felony charges when he first became acquainted with the Shelby County Sheriff's Department. He then went back over his testimony on direct about the operation in Logansport. He stated that this was the first operation in which anyone had given him a driver's license. When the defense counsel questioned Pitts about his identification of the defendant, Pitts admitted that it had been nine or ten months before trial that the operation had taken place, and that he couldn't recall other individuals had been standing by a fire where he met the defendant. Defense counsel also asked Pitts if he could remember all 40 of the individuals who were involved in the other drug transactions in which he participated, and Pitts responded that he probably could although it would be difficult.
On redirect, Pitts testified that none of the other individuals by the fire got into his vehicle, that the defendant was in the vehicle with him the entire length of time shown on the video until the door could be heard closing, and that he looked at the defendant's driver's license picture.
On recross, Pitts admitted that he did not know how close Sergeant Banta was to his location during the operation and that he did not know whether Sergeant Banta saw the transaction take place.
The next witness to testify for the State was Sergeant Michael K. Banta of the DeSoto Parish Sheriff's Office, Narcotics Division. Banta testified that the video in evidence accurately reflected what was done on the day of the operation. He then explained about fitting Pitts with audio and video equipment for the transaction and about how the controlled buys generally work. He indicated that Pitts was sent to an area where there had been numerous complaints. Banta explained that in addition to audio and video recording devices, a transmitter was used in Pitts' vehicle so that Banta could listen in. Banta testified that he tried to follow Pitts on that date as best he could.
*685 Banta testified that when Pitts left him at the beginning of the operation, Banta had given him an empty plastic evidence bag with a number on it. When Pitts returned, the bag contained two off-white rocks that later were analyzed and found to be crack cocaine. Pursuant to Banta's testimony, the lab report and certificate of notice to the defendant were then introduced without objection. Also introduced via Banta's testimony was a Louisiana criminal history inquiry dated 2/15/07 that Banta had generated and which showed basic information on the defendant like date of birth, race, gender, height, weight, social security number, address, and driver's license number. Banta then testified that the birth date and other information Pitts read on the video from the defendant's license matched the information from the criminal history inquiry. Banta also testified that the defendant's address was in the same vicinity as where Pitts testified he picked up the defendant.
On cross-examination, Banta admitted that in the drug operations he tried to keep visual contact, but that he did not have visual contact in this case and never identified the defendant. Banta indicated that Pitts only made one buy on that date. He admitted that the area where the buy took place was a high crime area and that he would not be shocked if a person in that area obtained a license that wasn't his or hers. He also admitted that the defendant did not appear visually on the video.
After Sergeant Banta's testimony, the state rested. The defense rested without calling any witnesses or presenting any testimony. The jury returned a ten-to-two verdict finding the defendant guilty as charged. The court ordered a PSI.
On January 20, 2008, the defendant was sentenced. At the beginning of the sentencing hearing, the defendant's counsel indicated that he had prepared a motion for new trial, but would not file it in exchange for the State not filing a habitual offender bill; the State concurred.
The court noted that the sentencing range was from two to thirty years, and that the defendant had a prior criminal history. The court stated that in 1996, the defendant was convicted of simple burglary and received three years at the Louisiana Department of Corrections at hard labor. In 2000, he was charged with distribution of cocaine, which was reduced to possession of cocaine, and received a one-year suspended sentence at the Louisiana Department of Corrections and one year's probation. In 2003, he was convicted of possession of a controlled dangerous substance and received a two-year suspended sentence at the Louisiana Department of Corrections, with two years' probation that terminated unsatisfactorily. Finally, in 2007, he committed the instant offense. Thus, the court noted that the defendant was a fourth felony offender. After stating that it had reviewed the defendant's personal history, the PSI, and the facts of the case, the court sentenced the defendant to 10 years at hard labor with credit for time served.

DISCUSSION
In the defendant's first assignment of error, he contends that the evidence was insufficient to convict. First, the convict who acted as the confidential informant could not be trusted. Second, the agent supervising the "controlled buy" never saw the person from whom the confidential informant claimed he got two rocks of crack. Third, the defendant argues that the sole identification was a driver's license, which was not offered into evidence, and that the testimony of the paid witness alone is insufficient to identify him. The defendant argues that Pitts never saw "the real dealer" and that the defendant was a *686 drug addict who knew where to get the two crack rocks.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2 Cir. 4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
Under the Jackson v. Virginia standard, we review the record in the light most favorable to the prosecution to determine whether the evidence was sufficient to convince any rational trier of fact that all the essential elements of the crime had been proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, 41,981 (La.App. 2d Cir.5/9/07), 956 So.2d 769; State v. Burd, 40,480 (La.App. 2d Cir.1/27/06), 921 So.2d 219, writ denied, XXXX-XXXX (La.11/9/06), 941 So.2d 35. This is equally applicable to the testimony of undercover drug agents. State v. Anderson, 30,306 (La.App. 2d Cir.1/21/98), 706 So.2d 598.
In the instant case, the identification rests largely on the testimony of the confidential informant, Pitts. The jury chose to believe him, and his testimony was augmented by the driver's license information that he read on the video that the jury watched. Pitts was in direct contact with the defendant for a significant period on two occasions, and there was nothing to indicate either that someone other than the defendant was in Pitts' vehicle, or that Pitts was not correct in saying that the picture on the license looked like the defendant. There was no internal contradiction or irreconcilable conflict between Pitts' testimony and the physical evidence, including the video.
In addressing the defendant's contention that he did not distribute cocaine because he was just an intermediary between Pitts and "the real dealer," we must refer to Louisiana Revised Statute 40:961(14), which states:
"Distribute" means to deliver a controlled dangerous substance whether by physical delivery, administration, subterfuge, furnishing a prescription, or by *687 filling, packaging, labeling or compounding the substance pursuant to the lawful order of a practitioner.
In this case, the defendant clearly delivered the two rocks by physical delivery to Pitts. There is no dispute that the rocks contained crack cocaine. Therefore, this assignment of error has no merit.
In his second assignment of error, the defendant contends that the sentence of 10 years is excessive. More specifically, the defendant argues that he was, at most, an intermediary between the confidential informant and a third party and therefore was not as culpable as a person engaged in drug dealing as an active seller.
The defendant argues that Pitts did not bust a "dealer" and that 10 years "for running this errand" is excessive because it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain, and is grossly out of proportion to the severity of the crime.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court will not set aside a sentence as excessive. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. McCall, 37-442 (La.App. 2d Cir.8/20/03), 852 So.2d 1162, writ denied, 04-0039 (La.12/17/04), 888 So.2d 858. On review, the appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. Id.
In reviewing claims of excessive sentence, an appellate court uses a two-step process. First, the record must show, as it does here, that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App. 2d Cir.6/24/98), 715 So.2d 641.
The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2d Cir.04/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.06/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App. 2d Cir.3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.
Second, the determination of whether the sentence imposed is too severe is contingent upon the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. *688 Bradford, 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864.
The record shows that the trial court specifically considered aggravating and mitigating circumstances, thereby complying with Louisiana C. Cr. P. art. 894.1, and tailored the sentence to the instant offense and this offender. The pre-sentence investigation report reviewed by the trial court indicated that the background of the defendant and the circumstances of the case supported the 10-year sentence. Furthermore, the defendant got the benefit of his deal with the State not to bill him as a habitual offender that significantly reduced his sentencing exposure. The punishment for the instant offense is imprisonment at hard labor for not less than two years nor more than thirty years, with a possible imposition of a fine of not more than fifty thousand dollars ($50,000.00). The sentence imposed upon the defendant clearly fell within the range established by law. Considering these factors, the sentence in no way shocks the sense of justice. The 10-year hard labor sentence imposed herein is not excessive. Finding no manifest abuse of discretion, this court may not set aside this sentence as excessive.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.