787 So.2d 509 (2001)
STATE of Louisiana, Appellee,
v.
Danny Eugene CARTER, Appellant.
No. 34,677-KA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2001.
*511 Peggy J. Sullivan, Louisiana Appellate Project, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Catherine Marion Estopinal and Laura Owen Wingate, Assistant District Attorneys, Counsel for Appellee.
Before NORRIS, STEWART and DREW, JJ.
NORRIS, Chief Judge.
Following a jury trial, the defendant, Danny Eugene Carter, was found guilty as charged on one count of attempted first degree murder. The district court imposed a sentence of 40 years at hard labor without benefits. Carter appeals both his conviction and sentence. For the reasons expressed, we affirm.

Factual Background
Viewed in the light most favorable to the state, the evidence revealed that on August 7, 1998, Carter spent the day drinking beer and riding around with a friend, Dwight Smith. At one point during the day, Carter went to his house and retrieved a single-barrel sawed-off shotgun, and expressed to Smith that he was going to shoot someone. On the way to Jack and Anita Pine's house in Mooringsport, Carter told Smith that he wanted to "shoot a n___."
At the Pines' house, Carter left the shotgun in the car. Later that night, Carter and Jack Pine got Anita to make a phone call to an African-American acquaintance, Kevin Shephard, asking him to meet her in a secluded area on Highway 2 near Gray, Texas. Anita then left in her car. Carter and Pine left shortly thereafter in Smith's car without permission, leaving Smith behind. Smith then fell asleep on the porch.
Shephard arrived at the spot where he was to meet Anita, finding her darkened car. When Shephard approached the car, *512 someone emerged from the bushes and shot him in the face. At trial, Shephard testified that he then heard two men talking, and identified one of the voices as Jack Pine, who asked whether the "n___ was dead." Carter then began to beat Shephard about the head with the shotgun, breaking the barrel, and calling him a "black s.o.b." Shephard then played dead to avoid further beating, which prompted his assailants to leave him and take a black shaving kit from his car before departing. Shephard managed to get into his car and drive to a friend's house for help.
Caddo Parish Sheriffs Deputy Stacy Cowgill responded to a 911 call and found Shephard badly beaten and bloody with large indentations on both sides of his head, his forehead protruding grotesquely, his right eye out of its socket, and with large cuts and blood all over his face. Cowgill testified that Shephard was able to relate that the incident had occurred on a dirt road near where he was found, but he was unable to determine from the victim what had happened or who the perpetrators were. Shephard was evacuated by helicopter and was hospitalized for over two weeks. Shephard was on life support machines for eight days, and nearly died, and lost his right eye.
After the assault on Shephard, Anita returned to her home and woke up Smith. Carter and Jack returned shortly thereafter with Shephard's shaving kit. They rummaged through the kit, looking in vain for drugs and money. During this time, Carter admitted to Smith that he had shot Shepard. Carter and Smith then left the Pines', where Smith observed Carter burn the shaving kit in the woods and throw the shotgun into Caddo Lake. Carter then directed Smith to drive to the dirt road where he and Pine had assaulted Shephard, intending to search "the body of that guy because we didn't find nothing in his car or nothing." Not finding the body, Carter pointed out a bloodstain in the road saying that was where he had shot Shephard. When the men saw a number of police units nearby, Carter remarked, "I guess that's how far my n___ made it."
Fifteen days later, Smith came forward and went to the police after a friend told him that his car had been seen at the scene of Shephard's assault. Smith then took the investigating officer, Caddo Parish Sheriffs Deputy James Long, to where Carter threw the shotgun over the bridge and where the bag was partially burned. Long also testified that deputies recovered pieces of the shotgun stock, a cigarette, and a wad from a shotgun shell at the scene of the attack.
Carter and the Pines were arrested and charged with attempted first-degree murder. As a result of plea bargains, Jack and Anita Pine pled guilty to second-degree battery; they received agreed-upon sentences of five and three years at hard labor, respectively. A jury convicted Carter of attempted first-degree murder and he was sentenced to 40 years at hard labor, without benefit of probation, parole, or suspension of sentence. After the district court denied Carter's timely motions for a new trial, post verdict judgment of acquittal, and reconsideration of sentence, this appeal followed.

DiscussionSufficiency of the Evidence
Carter initially contends that the evidence was insufficient for the jury to find him guilty of the offense charged, beyond a reasonable doubt. Essentially, Carter challenges the credibility of the state's primary witnessesJack Pine and Dwight Smithsuggesting that they actually were the persons who attacked Shephard.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the *513 reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
Under Jackson v. Virginia, supra, the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, supra; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (1992).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. Art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.
To convict this defendant of attempted first degree murder the State was required to prove beyond a reasonable doubt that Carter had the specific intent to kill the victim, that Carter was engaged in the perpetration of an armed robbery, and that Carter, having such specific intent to kill, did an act for the purpose of and tending directly toward the accomplishment of the murder. La. R.S. 14:27, 14:30; State v. Strother, 362 So.2d 508 (La.1978); State v. Odom, 511 So.2d 1214 (La.App. 2d Cir.), writ denied, 515 So.2d 446 (1987). A specific intent to kill may be reasonably inferred from the defendant's intentional use of a deadly weapon in firing a shot aimed at the intended victim, along with the other circumstances of the case. State v. Tassin, 536 So.2d 402, 411 (La.1988), cert denied, 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 159 (1989); State v. Lee, 275 So.2d 757 (La.1973). To prove that the attempted murder occurred during the commission or attempted commission of an armed robbery, the State had to establish beyond a reasonable doubt that Carter took something of value from the victim or from under the control of the victim, through the use of force or intimidation, while armed with a dangerous weapon. La.R.S. 14:64; State v. Bright, 98-0398 (La.4/11/00), 776 So.2d 1134, 1141. Specific intent is the state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1).
In the present case, the victim, Shephard, agreed that he did not see who shot him, but he said he could identify Danny Carter and Jack Pine at the scene because he recognized the side of Carter's face and recognized Pine's voice. Pine, an *514 eyewitness, testified in detail as to Carter's participation in the crime. Smith heard Carter inculpate himself twice and saw him attempt to destroy pertinent evidence.
At trial, Pine's credibility was questioned by the defense, citing a letter he wrote earlier in which he claimed that he tricked his wife into getting the victim to meet her. After Shephard met Anita at the prearranged location, Pine wrote that he shot the victim. He claimed to do it out of jealousy because he couldn't stand a "n___" putting hands on his wife, buying things for her, sleeping with her, and prostituting her. Pine ended the letter by stating he shot Kevin Shephard and left him for dead. At trial, Pine admitted that he wrote this letter in an effort to "cover" for his wife before she was arrested, but in reality, the contents of the letter were not true; he was simply lying to protect his wife. On redirect, Pine admitted he also lied in an earlier statement to investigators that Carter had passed out and never left the house.
On appeal, Carter similarly challenges Smith's testimony because Smith did not come forward until 15 days had passed and only then when it appeared that he would be implicated in the crime.
The jury was able to evaluate the reasons Pine and Smith were initially reluctant to cooperate with the police, Pine's contradictory letter and statement, and to balance their credibility with the other witnesses and the physical evidence. "The trier of fact makes credibility determinations, and may, within the bounds of rationality, accept or reject the testimony of any witnesses." State v. Hampton, 98-0331, (La.4/23/99), 750 So.2d 867, 880, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999). Accordingly, the jury was entitled to accept their sworn testimony at trial.
In addition, the evidence is sufficient to support the conviction beyond a reasonable doubt. Prior to the shooting, Carter picked up a sawed-off shotgun from his house, announcing specifically that he was going to shoot a "n___." Carter and Jack Pine had Anita Pine phone the victim, an African-American, and tell him to meet her at a secluded location, demonstrating premeditation. Carter then shot the victim in the face and beat him, demonstrating an intent to kill. Shephard identified Pine by his voice when Pine asked if the victim was dead, showing that Carter was the shooter. At the scene, the victim saw Carter, whom he knew, from the side. The two men stole property from Shephard's vehicle, proving beyond a reasonable doubt that the shooting was perpetrated during an armed robbery. The men admitted to Smith that they took the shaving kit because they believed it contained drugs or money. Carter also made incriminating statements after returning to where he left Shephard for dead and hoping to rob the body; while there, he pointed out to Smith where he shot the victim.
The evidence, viewed in the light most favorable to the prosecution, was sufficient to prove every essential element of attempted second degree murder beyond a reasonable doubt. This assignment of error is without merit.

Excessive Sentence
Carter next contends that his sentence is excessive and unconstitutional and that the court abused its discretion. Particularly, Carter complains that although Jack Pine participated in the same crime, he received a much lesser sentence.
There is no requirement that codefendants be treated equally by the sentencing judge. State v. Rogers, 405 So.2d 829 (La.1981); State v. Taylor, 485 So.2d 117 (La.App. 2d Cir.1986). The disparity of sentences between codefendants *515 is only a factor to be considered along with all other appropriate considerations in evaluating a contention that a sentence is excessive. State v. Quimby, 419 So.2d 951 (La.1982); State v. Jackson, 30,473 (La. App.2d Cir.5/13/98), 714 So.2d 87, writ denied, 98-1778 (La.11/6/98), 727 So.2d 444. Pine received a lesser sentence in part because he pled guilty to a lesser charge and because he cooperated with the authorities. As such, this argument does not present a basis for vacating the sentence.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.), writ denied, 521 So.2d 1143 (1988).
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
Carter's contention this sentence is excessive is without merit. On this charge, Carter faced a sentencing range of no less than 10 years to no more than 50 years at hard labor, without benefits. The court considered a PSI report which provided information about Carter's social history, employment record and his lack of a prior criminal record.
In the sentencing colloquy, the judge said she had considered the facts and circumstances of the case, as well as the gravity of the offense. Although the sentencing colloquy was not very thorough, the record clearly supports the sentence: Carter planned a racially-motivated murder-robbery; he purposefully tricked his victim to a secluded spot; he shot him and beat him on the head, thus manifesting deliberate cruelty; Carter then left Shephard for dead after taking items from his car. In addition to a lengthy hospital stay, Shephard suffered the loss of an eye *516 for the balance of his life as a result of Carter's attack. Since the record clearly supports the sentencing choice, there is no manifest abuse of sentencing discretion. State v. Square, supra. The court's articulation and the other matters of record support the sentence imposed on this first felony offender.

Conclusion
For the reasons expressed above, Carter's conviction and sentence are affirmed.
AFFIRMED.