930 So.2d 1122 (2006)
STATE of Louisiana, Appellee
v.
Ardis Taft ALLEN, III, Appellant.
No. 40,972-KA.
Court of Appeal of Louisiana, Second Circuit.
May 17, 2006.
*1125 Randall R. Robinson, Bossier City, Francis E. Mouton, III, Darren C. Giles, for Appellant.
J. Schuyler Marvin, District Attorney, Karen E. Stubbs, Assistant District Attorney, for Appellee.
Before WILLIAMS, PEATROSS and MOORE, JJ.
WILLIAMS, J.
The defendant, Ardis Taft Allen, III, was convicted of attempted armed robbery, in violation of LSA-R.S. 14:27 and 14:64, and two counts of aggravated battery, in violation of LSA-R.S. 14:34. He was sentenced to serve 35 years at hard labor without benefit of parole, probation or suspension of sentence for the attempted armed robbery conviction and 10 years at hard labor for each of the aggravated battery convictions. The sentences were ordered to be served concurrently. For the following reasons, we affirm the defendant's convictions and sentences.

FACTS
On September 29, 1996, the defendant and his brother, Russell Allen, went to Boomtown Grocery in Haughton, Louisiana. The defendant entered the store armed with a gun and encountered Thelma Cunningham, the store's 70-year-old owner, and her sister, Nellie Staton, a 77-year-old employee of the store. The defendant asked Cunningham for two beers. As Cunningham turned to retrieve the beers from the cooler, the defendant jumped over the counter area and began firing his weapon. He demanded money and threatened to kill the two women. Cunningham retrieved a pistol from the money box, turned and shot the defendant in the upper torso. The defendant then opened fire on both women. At some point during the exchange, Cunningham was shot in the arm. The defendant crawled to the door and called for help. Russell Allen dragged the defendant to his vehicle and drove away.
Russell Allen then called the authorities and reported that the defendant had been shot while driving the defendant's Volvo. However, the officers investigating the shooting immediately discovered that the evidence did not match the reported scenario. The officers found that the Volvo's engine was cool, while the hood of a blue pickup truck, owned by Russell Allen, was warm. Also, a substance that appeared to be blood was observed on the passenger's side of the pickup truck. Both vehicles were impounded. Russell Allen then showed the officers a .22 caliber revolver that the defendant had asked him to hide.
During the investigations of the defendant's shooting and of the attempted robbery of Boomtown Grocery, the investigative officers realized that the details of the two crimes coincided. Upon further questioning of witnesses, Russell Allen gave a statement implicating the defendant as the perpetrator of the attempted armed robbery of Boomtown Grocery. Subsequently, the defendant confessed to being the gunman in the attempted armed robbery.
The defendant was charged by bill of information with one count of attempted armed robbery and two counts of attempted first degree murder. He entered a guilty plea to one count of attempted first degree murder with a 30-year at hard labor sentence, and the other two counts were dismissed. The guilty plea was set aside through a post-conviction relief *1126 claim. See, State ex rel. Allen v. State, XXXX-XXXX (La.5/11/01), 792 So.2d 1. On remand, the defendant opted for a jury trial and was convicted of one count of attempted armed robbery and two counts of aggravated battery. He was sentenced to 35 years at hard labor, without benefit of parole, probation or suspension of sentence for the attempted armed robbery conviction, and 10 years at hard labor on each of the aggravated battery convictions. The sentences were ordered to be served concurrently. The defendant was granted an out-of-time appeal.[1]

DISCUSSION

Sufficiency of Evidence
In this assignment of error, the defendant contends the evidence is insufficient to support his conviction. Specifically, the defendant contends the state failed to produce any physical evidence at trial and instead relied on the testimony of "two elderly victims" who had not identified him as the perpetrator prior to the trial. The defendant further argues that no battery took place with regard to one of the victims, Nellie Staton, because she was not struck by a "bullet, flying debris or the defendant."
Armed robbery is the taking of anything of value belonging to another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64. "Any person who, having a specific intent to commit [armed robbery], does . . . an act for the purpose of and tending directly toward the accomplishment of his object, is guilty of an attempt to commit [armed robbery], and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose." See, LSA-R.S. 14:27(A).
At the time of the commission of the instant offense, first degree murder was defined as follows:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of . . . armed robbery, . . . first degree robbery or simple robbery.
* * *
(3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person;
* * *
Aggravated battery is a responsive verdict for attempted first degree murder. See, LSA-C.Cr.P. art. 814(A)(2). Battery is defined as the "intentional use of force or violence upon the person of another. . . ." LSA-R.S. 14:33. Aggravated battery is a battery committed with a dangerous weapon. LSA-R.S. 14:34.
The proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The Jackson standard is applicable in cases involving *1127 both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La. 1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a judge or jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, XXXX-XXXX (La.11/14/03), 858 So.2d 422. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2d Cir.5/8/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, 98-0282 (La.6/26/98), 719 So.2d 1048.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App. 2d Cir.4/12/96), 677 So.2d 1008 (on rehearing), writ denied, 96-1807 (La.2/21/97), 688 So.2d 520.
The record does not reflect that the defendant filed a motion for post-verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821. However, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App. 2d Cir.2/26/97), 691 So.2d 1273.
During the trial, Thelma Cunningham testified that the defendant, who had been in the store previously, came into the store and asked for two beers. She stated, "When I turned my back to pick the beer up, just as I picked the beer up out of the box I heard the shelf crack and he started cussing and shooting." She said he demanded money and said he "was going to kill us both." She further testified "I knew that he was going to kill us because I figured he would have because it was the third time I had saw him [sic]." She testified that she got a gun out of the money box, turned and shot him. She was unsure whether she was shot before or after she shot the defendant.
On cross-examination, Cunningham described the area where she was shot as a 10 by 12-foot space, and she admitted that the bullet that hit her arm may have been from a ricochet shot. She stated that because of the close proximity, the defendant could have killed her had he wanted to do so.
Parts of Cunningham's testimony were corroborated by the testimony of Nellie Staton, who also identified the defendant as the shooter. Staton testified that the defendant was waving the gun and shooting "just as far as his arm would go around."
Further, the defendant's brother, Russell Allen, testified that the defendant had *1128 a gun in his hand when he helped him leave the store. He identified the "small" gun shown in State's Exhibit Number 2 as the gun that the defendant had asked him to put away in the house before the authorities arrived.
Moreover, the defendant's own statement implicated him in this crime.[2] In his October 3, 1996 statement to Detective Keith Pierce of the Bossier City Sheriff's Office, the defendant stated:
[W]e took off, got the gas, and went on over there, stopped at Boomtown Grocery. I asked [my brother] did he want a beer and he said yeh [sic]. I went in. I ordered two Bud Lights and when the lady went to wait on me I pulled a gun on her and told her to give me the money. She turned towards the beer cooler and while she's doing that I jumped up on a little shelf that's on top of that doorway, sets the beer and stuff at [sic], and when she turned back around she shot me off the top of the thing.
The defendant further stated that he pulled his gun out and jumped on top of the counter "to try to get control of the situation." The defendant expressed that he could have killed the women when he first entered the store, but his intention was "not murder at all." He stated that he had been to the store at least 20 times prior to the night in question. He stated that he wanted to rob the store before, but when he started to pull his weapon out, another car entered the parking lot.
Based on the foregoing, we conclude that the record is sufficient to show that the defendant was the person who attempted to rob Boomtown Grocery, and he fired the shot that injured Cunningham. Therefore, the convictions for attempted armed robbery and aggravated battery of Cunningham are supported by the record.
With regard to the conviction of aggravated battery of Staton, the defendant contends that no battery occurred because Staton was not struck by a bullet or any debris. The jury returned a responsive verdict of aggravated battery, and the sufficiency of that verdict depends on whether or not the evidence supports the elements of the greater offense of attempted first degree murder.
To convict a defendant of attempted first degree murder, the state must show beyond a reasonable doubt that the perpetrator had the specific intent to kill the victim, was engaged in the perpetration of an armed robbery, and, having such specific intent to kill, did an act for the purpose of and tending directly toward the accomplishment of the murder. State v. Carter, 34,677 (La.App. 2d Cir.5/9/01), 787 So.2d 509, writ denied, XXXX-XXXX (La.5/3/02), 815 So.2d 93. In Carter, this court stated:
A specific intent to kill may be reasonably inferred from the defendant's intentional use of a deadly weapon in firing a shot aimed at the intended victim, along with the other circumstances of the case. State v. Tassin, 536 So.2d 402, 411 (La. 1988), cert. denied, 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 159 (1989); State v. Lee, 275 So.2d 757 (La.1973). To prove that the attempted murder occurred during the commission or attempted commission of an armed robbery, the State had to establish beyond a reasonable doubt that Carter took something of value from the victim or from under the control of the victim, through the use of force or intimidation, *1129 while armed with a dangerous weapon. La. R.S. 14:64; State v. Bright, 98-0398 (La.4/11/00), 776 So.2d 1134, 1141. Specific intent is the state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1).
Carter, 787 So.2d at 513.
Although the defendant stated that he did not intend to kill Cunningham and Staton, both women testified that the defendant threatened to kill them prior to firing the shots. Cunningham testified that she thought that he had killed her sister and that he was going to kill her as well. The defendant's action in firing a sequence of gunshots into the confined space where the two women were standing implies that the defendant either intended to kill both women, or he intended to inflict great bodily harm. See, State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 02-2634 (La.9/5/03), 852 So.2d 1020; State v. Johnson, 27,522 (La.App. 2d Cir.12/6/95), 665 So.2d 1237. For these reasons, we conclude that the evidence was sufficient to support the elements of the greater offense, attempted first degree murder. Accordingly, we conclude that the responsive verdict for attempted first degree murder, aggravated battery, is supported by the evidence.

Motion to Suppress
The defendant contends the trial court erred in denying the motion to suppress his confession. According to the defendant, his statement was given while he was hospitalized under an armed guard, and he was denied his right to counsel. The defendant also urges that he was under the influence of narcotics, and he was being treated for heroin addiction when the statement was given.
Before a confession can be introduced into evidence, the state must affirmatively prove that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises as mandated by LSA-C.Cr.P. art. 703[3] and LSA-R.S. 15:451.[4] The state must also establish that an accused, who makes a statement during custodial interrogation, was first advised of his Miranda rights. *1130 State v. Walker, 28,577 (La.App. 2d Cir.10/4/96), 681 So.2d 1023; State v. Taylor, 30,310 (La.App. 2d Cir.2/25/98), 709 So.2d 883.
A trial court's findings following a free and voluntary hearing are entitled to great weight and will not be disturbed unless unsupported by the evidence. State v. Durr, 28,197 (La.App. 2d Cir.6/26/96), 677 So.2d 596; State v. English, 582 So.2d 1358 (La.App. 2d Cir. 1991), writ denied, 584 So.2d 1172 (La. 1991). Testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely and voluntarily. State v. Pittman, 585 So.2d 591 (La.App. 5th Cir.), writ denied, 586 So.2d 545 (La.1991). Police testimony may overcome a defendant's claim that his statement was involuntary because he suffered from a wound or lack of sleep. State v. Billiot, 94-2419 (La.App. 1 Cir. 4/4/96), 672 So.2d 361, writ denied, 96-1149 (La.10/11/96), 680 So.2d 655. See also State v. Sharp, 35,714 (La.App. 2d Cir.2/27/02), 810 So.2d 1179.
In the instant case, Detective Pierce testified that the defendant was hospitalized and was being guarded when he gave his statement on October 3, 1996. The officer testified that he advised the defendant of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the defendant understood those rights and voluntarily gave a statement because he "didn't want to see his brother go to Angola Penitentiary." The officer testified that the statement was recorded. The record contains a waiver of rights card, signed by the defendant, which shows that he was advised of his rights under Miranda, supra, and he waived those rights.[5] During his testimony on re-direct, Detective Pierce stated that the defendant did not appear to be incoherent when he gave his statement, and he made sure that the defendant understood his rights as set forth on the card. Detective Pierce stated that he would not have taken the statement if he thought the defendant was under the influence of any medications.
The defendant testified that he was being treated for heroin addiction and was under the influence of Methadone and Lortab at the time the statement was given. He stated, "You could look at my signature on that rights card and tell that I was on something when I signed my signature." However, on cross-examination, the defendant admitted that he agreed to give a statement to keep his brother out of trouble.
In State v. Sharp, 35,714 (La.App. 2d Cir.2/27/02), 810 So.2d 1179, writ denied, XXXX-XXXX (La.6/6/03), 845 So.2d 1081, this court stated:
We likewise find no error in the trial court's determination that this statement was admissible. The two interviewing officers' testimony supports the conclusion that Sharp was alert when questioned and gave specific and coherent *1131 responses to the questions asked of him. With Sharp presenting no evidence to show his being under the influence of pain medication, we conclude that the officers' testimony is sufficient to overcome Sharp's claim that the March 14th statement was not freely and voluntarily given because of the effects of prescription drugs. We, therefore, reject this argument.
In this case, there is nothing to indicate that the trial court erred in denying the defendant's motion to suppress. Detective Pierce's testimony supports a finding that the defendant was coherent and knowingly waived his rights and voluntarily gave his confession. A reading of the transcript of the defendant's statement reveals that the defendant gave a very detailed account of the events of the attempted armed robbery. His responses to the detective's questions were specific and coherent. Further, the defendant offered no evidence to support his claim that he was under the influence of prescription medication. In fact, his statement to the detective, made four days after the attempted robbery, reflects a clear recall of the events of the crime. Moreover, his testimony at trial indicates that he had total recollection, nearly eight years later, of the details surrounding the making of the statement. He was able to recall the name of the interviewing detective, the number of times the detective visited him during his hospitalization and the name of the armed guard posted in his room. Therefore, we conclude that the evidence is sufficient to overcome the defendant's claim that his statement to Detective Pierce was not free and voluntarily given.
Furthermore, it should also be noted that even without the confession, the evidence overwhelmingly supports these convictions. Russell Allen testified that he drove the defendant to the grocery store. After the defendant entered the store, he "heard sounds . . . maybe gunshots," and noticed that the defendant was "sitting at the door. . . . He hollered for me to come get him. . . . He was bleeding." Russell Allen also testified that the defendant had a "small black" gun in his hand.
Further, both victims identified the defendant as the armed man who attempted to rob the store. Cunningham testified that the defendant had been in the store before and that she could clearly identify him as the man who came in, demanded money and began shooting that evening. Staton also dramatically identified the defendant as the man who was "awaving [sic] that little pistol threatening to kill us every breath." For these reasons, we find this assignment of error is without merit.

"Best Evidence"
The defendant also contends the trial court erred in allowing the state to present evidence of his confession, absent the best evidence of the same, i.e., the audiotape of the statement. The state, in its opening statement, asserted that it would be presenting an audiotape of the defendant's confession. When it came time to present the tape, it was discovered that the tapes in the evidence packet did not contain the defendant's confession. At that point, the defendant moved for a mistrial, which was denied. At a hearing conducted outside the presence of the jury, the trial court allowed a copy of the transcript of the taped conversation to be admitted into the record, ruling that the state had shown that the tape had been lost through no fault of its own, and there was no bad faith on the part of the state. The trial court further ruled that Detective Pierce could testify about what the defendant told him.
LSA-C.E. art. 1004 provides, in pertinent part:
The original is not required, and other evidence of the contents of a writing, *1132 recording, or photograph is admissible if:
(1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith;
(2) Original not obtainable. No original can be obtained by any available judicial process or procedure;
* * *
(5) Impracticality of producing original. The original, because of its location, permanent fixture, or otherwise, cannot as a practical matter be produced in court; or the cost or other consideration to be incurred in securing the original is prohibitive and it appears that a copy will serve the evidentiary purpose.
At trial, Detective Pierce testified regarding the contents of the defendant's statement. Nothing further was mentioned about the missing audiotape, and the transcript of the tape was not read to the jury. The defendant has not articulated how the trial court erred in its finding of "good faith" on the part of the state. The record is clear that the sheriff's department indicated that the tape, which had been in its possession, had presumably been misplaced in the years between the taking of the prior guilty plea in 1997 and the trial in 2004.
LSA-C.E. art. 1004 clearly provides that "other evidence of the contents of a . . . recording is admissible" when "[a]ll originals are lost or have been destroyed" or "[n]o original can be obtained by any available judicial process or procedure . . ." Therefore, we conclude that the trial court did not err in allowing Detective Pierce's testimony and the transcript of the tape to be admitted into evidence.

Excessive Sentence
The defendant contends the sentences imposed are excessive. He argues the trial court failed to adequately consider the factors listed in LSA-C.Cr.P. art. 894.1. He specifically argues that the trial court failed to consider the mitigating circumstance that he is incapable of committing these types of offenses in the future since he is a paraplegic as a result of the gunshot wounds he received during this robbery. He further argues that he previously received only a 30-year term for attempted first degree murder when he entered a guilty plea and that the 35-year term for armed robbery "represents nothing more than punishment for defendant's exercise of his constitutional rights."
The record does not show that a motion to reconsider sentence was filed on behalf of the appellant. When a defendant fails to file a motion to reconsider sentence, pursuant to LSA-C.Cr.P. art. 881.1, the appellate court's review is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La.App. 2d Cir.2/25/98), 707 So.2d 164. Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992); State v. White, 37,815 (La.App. 2d Cir.12/17/03), 862 So.2d 1123.
LSA-R.S. 14:64 provides that whoever commits armed robbery shall be imprisoned at hard labor for not less than 10 years and for not more than 99 years, without benefit of parole, probation, or suspension of sentence. The attempt statute, LSA-R.S. 14:27, provides, in relevant part:
* * *
D. Whoever attempts to commit any crime shall be punished as follows:

*1133 * * *
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
LSA-R.S. 14:34 provides that the penalty for aggravated battery shall be a fine of not more than five thousand dollars, imprisonment with or without hard labor for not more than ten years, or both.
In this case, the record reflects that the trial court considered the factors set forth in LSA-C.Cr.P. art. 894.1, including the fact that the defendant was "severely injured" during the commission of these crimes. The trial court noted defendant's criminal history and the age of the victims. The attempted armed robbery sentence could have been 49½ years, instead of the 35 years imposed by the trial court. The maximum sentences for the aggravated battery convictions, 10 years each, while the maximum allowed by law, are not unconstitutionally excessive. Nothing was presented at the sentencing hearing or in this appellate brief to show that the sentences are too severe considering the circumstances.
Additionally, the defendant argues that the 35-year sentence for attempted armed robbery is excessive, since it is longer than the agreed-upon sentence previously ordered for the guilty plea to attempted first degree murder.
In State v. Rutledge, 259 La. 543, 250 So.2d 734 (1971), the defendant pled guilty to the charge of attempted simple escape and was sentenced to serve one year in prison. Thereafter, his conviction and sentence were vacated and set aside. New proceedings were instituted, and the defendant was found guilty by a jury. The trial court imposed a 2½ year sentence. The defendant objected to the sentence, contending the court could not constitutionally impose a greater sentence than the one-year sentence originally imposed. Quoting North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the court stated:
Whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.
Rutledge, 250 So.2d at 737. The court concluded that the sentence was "constitutionally objectionable" under Pearce because the reasons for the disparity between the sentences did not appear in the record. The court remanded the matter "for correction of sentence under the rules prescribed by the Pearce decision as in the case of an illegal sentence." Rutledge, 250 So.2d at 738.
In Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the United States Supreme Court revisited its holding in Pearce, supra. In Smith, the defendant pled guilty to burglary and rape and was sentenced to concurrent terms of 30 years imprisonment for each conviction. Thereafter, he succeeded in having his guilty plea vacated. Following a trial, the jury found him guilty of burglary, rape and sodomy. The judge imposed a term of life imprisonment for the burglary conviction, a concurrent term of life imprisonment on the sodomy conviction and a consecutive term of 150 years imprisonment on the rape conviction. The trial judge explained that he was imposing a harsher sentence than that imposed following the *1134 guilty plea because the evidence presented at the trial revealed that the original sentence had been too lenient. The Supreme Court stated:
While the Pearce opinion appeared on its face to announce a rule of sweeping dimension, our subsequent cases have made clear that its presumption of vindictiveness "do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial." As we explained in Texas v. McCullough [475 U.S. at 138, 106 S.Ct. at 979], "the evil the [Pearce] Court sought to prevent" was not the imposition of "enlarged sentences after a new trial" but "vindictiveness of a sentencing judge."
* * *
Because the Pearce presumption "may operate in the absence of any proof of an improper motive and thus . . . block a legitimate response to criminal conduct," we have limited its application, like that of "other judicially created means of effectuating the rights secured by the [Constitution]," to circumstances "where its objectives are thought most efficaciously served." Such circumstances are those in which there is a "reasonable likelihood," that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness.
Alabama v. Smith, 490 U.S. at 799, 109 S.Ct. at 2204-05 (internal citations omitted).
In this case, the defendant did not put forth any evidence to indicate that the increased sentence was a product of actual vindictiveness. During the sentencing hearing, the trial court stated:
As it relates to your prior criminal history, the pre-sentence investigation indicates that in 1977, you pled guilty to the charge of simple burglary. You received a three-year hard labor sentence, suspended, three years active supervised probation. While on probation for the simple burglary, you committed the offense of armed robbery. You were convicted of that armed robbery . . . and you received a twenty-five year hard labor sentence with the Department of Corrections. You served a majority of that twenty-five year hard labor sentence. It's my understanding that you had not been released from the Department of Corrections when you committed this armed robbery or attempted armed robbery.
The trial court also noted that the defendant has been incarcerated for most of his adult life.
At the time the trial court imposed sentence based on the defendant's guilty plea, it had not heard all of the evidence, including the testimony of the two elderly victims, the defendant and his brother. Further, it did not have the benefit of the pre-sentence investigation report, in which the defendant's past criminal history and the impact on the victims were detailed. The newfound information about the nature of the instant crimes, the impact on the victims, as well as the defendant's previous convictions, indicated that it was proper to increase the sentence beyond that which was imposed during the previous plea bargain. For these reasons, we find that the defendant's argument lacks merit.

CONCLUSION
For the foregoing reasons, the defendant's convictions and sentences are hereby affirmed.
AFFIRMED.
NOTES
[1] The order granting the out-of-time appeal was signed ex parte, and the state has not objected to this action. Under the holding in State v. Counterman, 475 So.2d 336 (La.1985), the trial court should have treated the motion as an application for post-conviction relief and given the state an opportunity to respond. However, the state's failure to timely seek review of the trial court's ruling precludes it from objecting to the ruling. State v. George, 39,959 (La.App. 2d Cir.10/26/05), 914 So.2d 588
[2] We must note that the defendant's statement was introduced into evidence but was not read to the jury. However, as noted infra, one of the investigating officers testified with regard to the contents of the defendant's statement.
[3] LSA-C.Cr.P. art. 703 provides, in pertinent part:

* * *
B. A defendant may move on any constitutional ground to suppress a confession or statement of any nature made by the defendant.
* * *
D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant. . . .
* * *
G. When a ruling on a motion to suppress a confession or statement is adverse to the defendant, the state shall be required, prior to presenting the confession or statement to the jury, to introduce evidence concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement. A ruling made adversely to the defendant prior to trial upon a motion to suppress a confession or statement does not prevent the defendant from introducing evidence during the trial concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement.
[4] LSA-R.S. 15:451 provides:

Before what purposes to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.
[5] The card provides:

BOSSIER PARISH SHERIFF'S OFFICE
BENTON, LOUISIANA
LARRY C. DEEN, SHERIFF
I hereby notify you that you have a right to remain silent and you are not required to make any statement unless you want to do so voluntarily. Anything you say will be used against you in a court of law. You also have a right to consult with your attorney and to have him present with you. If you cannot afford an attorney, one will be appointed to represent you.
While you are not required to make any statement, you may waive those rights just explained to you and you are given the privilege of saying anything you want to about this case. Now with this understanding and waiving those rights just explained to you, do you wish to make a statement and tell how this happened?
/s/ Ardis T. Allen 10-3-96