HIGGINBOTHAM, J.
J.S.[1] was charged by petition in juvenile court with accessory after the fact in the commission of attempted first degree murder, a violation of La. R.S. 14:30, La. R.S. 14:27, and La. R.S. 14:25 (count 1), and illegal possession of a firearm by a juvenile, a violation of La. R.S. 14:95.8 (count 2). J.S. denied the allegations. J.S. filed motions to suppress and quash, which the juvenile court ultimately dismissed as moot. At an adjudication hearing, following the presentation of evidence, the juvenile court adjudicated J.S. delinquent as charged on both counts, and ordered a pre-disposition report. At the disposition hearing, the juvenile court sentenced J.S. to five years in the custody of the Department of Public Safety and Corrections, and ordered that J.S. be placed in a facility to address his needs. The juvenile court denied J.S.'s post-verdict motion to vacate the adjudication hearing. Although the minute extract indicated that J.S. was sentenced to serve five years on count one, as well as five years on count two to be served concurrently, on the signed "Judgment/Commitment Order," the juvenile court listed J.S.'s sentences to be five years on count 1 and six months on count 2 to be served concurrently. J.S. now appeals, designating three assignments of error. We affirm the adjudications and judgment of dispositions.
FACTS
Testimony was adduced at an adjudication hearing indicating that during the evening of March 14, 2018, J.S. and some of his friends approached another group of boys near a store in south Baton Rouge. The victim M.R., testified that J.S.'s group went by the name "BB-for-L," whereas he and his friends went by the name of "FAN." M.R. first testified that he saw one member from each group about to fight, but then clarified that he was supposed to fight one of the boys from "BB-for-L." Both M.R. and one of his friends saw N.D., a member of "BB-for-L," pull out a gun, and his friend alerted the rest of their group that N.D. had a gun. M.R.'s group began running away, and as M.R. was running, he realized that he had been shot in the shoulder from behind. M.R. testified that he heard four shots. M.R. identified J.S. in open court as one of the people present that evening, and testified that J.S. was standing behind the shooter. M.R. also noted that no one in his group had a gun, and that everyone was in relatively close proximity to each other when *315 the shooting started, though he ran in a different direction.
One of M.R.'s friends, D.B., also testified about that night. D.B. was familiar with J.S. and N.D. He confirmed M.R.'s version of the events, where some of the boys from "BB-for-L" sought to fight two members of "FAN." As they were about to fight, D.B. saw N.D. fire a gun, identifying it by the "sparks." D.B. testified that at that point, he fled because he did not want to get shot. D.B. also heard four gunshots as he ran away. D.B. explained that no one in their group had a gun. D.B. identified J.S. as one of the members of "BB-for-L" that was at the scene.
S.B., younger brother of D.B., also testified. His recollection was not as clear as that of M.R. or D.B., but he did recall seeing a firearm, running away, and hearing four shots. S.B. said he saw N.D. hold the gun and pull the trigger.
Baton Rouge Police Department Detective Joshua Brogan testified for the State. Det. Brogan investigated the crime scene and recovered four spent shell casings found in a line on the street. Det. Brogan testified that in his experience, that configuration indicated the shooter was moving either towards or away from an intended target. Upon his arrival, uniformed officers had already detained four victims at the scene, with one more being transported to the hospital. While Det. Brogan initially focused his investigation on N.D. as the perpetrator, he later developed J.S. as a suspect and interviewed him in the presence of J.S.'s mother. J.S. indicated he understood his Miranda[2] rights, and waived them by signing a waiver form. The juvenile court found J.S. knowingly and voluntarily waived his rights, and without objection admitted his statement into evidence.
In the interview video, recorded on Det. Brogan's body camera and played for the court, J.S. admitted that he stole the gun from his sister's boyfriend, who lived in the same home. J.S. said he stole the gun in anticipation of the fight and that no one told him to bring one. The same firearm was subsequently located in J.S.'s home pursuant to a search warrant, and J.S. admitted it was the firearm used by N.D. in the shooting. J.S. also admitted to running away after the first two shots, but then stopping and waiting for N.D. to catch up. After they met back up, N.D. gave the gun back to J.S. to return it to the location from which he stole it. J.S. testified that he moved it because he felt the police would be looking for the gun soon. Det. Brogan testified that J.S. did not contact the police to report an attempted murder, but was instead only found after the detective interviewed N.D.
ASSIGNMENTS OF ERROR # 1, # 2: INSUFFICIENT EVIDENCE
In J.S.'s first two assignments of error, he contends that the State presented insufficient evidence to find him delinquent beyond a reasonable doubt of either charged offense. With regards to the accessory after the fact charge, J.S. posits that the State did not affirmatively establish that he assisted N.D. evade arrest or conviction after N.D. shot the gun four times at the fleeing boys. Moreover, J.S. argues that the State did not establish beyond a reasonable doubt that N.D. committed attempted first degree murder. As for the possession of a firearm charge, J.S. asserts that there was no independent evidence to support his conviction. Specifically, and relative to both charges, J.S. claims nothing was presented to the juvenile court in support of a delinquency adjudication outside of his own uncorroborated statement *316 to Det. Brogan. Without more, J.S. concludes, finding him delinquent on solely his own statements contradicts established Louisiana jurisprudence on corpus delicti. In response, the State argues that the evidence, viewed in a light most favorable to the prosecution, supports the delinquency adjudication of both offenses.
In a juvenile adjudication proceeding, the State must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. La. Ch. Code art. 883. The burden of proof, beyond a reasonable doubt, is no less severe than the burden of proof required in an adult proceeding. State in Interest of S.T., 95-2187 (La. App. 1st Cir. 6/28/96), 677 So.2d 1071, 1074. Accordingly, on appeal the standard of review for the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the State proved the essential elements of the crime beyond a reasonable doubt, is applicable to delinquency cases. See La. Code Crim. P. art. 821.[3] Further, because a review of the law and facts in a juvenile delinquency proceeding is constitutionally mandated, an appellate court must review the record to determine if the juvenile court was clearly wrong in its factual findings. See State in Interest of D.M., 97-0628 (La. App. 1st Cir. 11/7/97), 704 So.2d 786, 789-90.
Uncorroborated Statement
First, we will address J.S.'s corpus delicti claim underlying the challenge to both adjudications. The Louisiana Supreme Court has noted that "[t]he overwhelming weight of authority is to the effect that there cannot be a lawful conviction of a crime unless the corpus delicti is established; that is to say, unless it is shown that a crime has been committed by some one." State v. Morgan , 157 La. 2, 963, 103 So. 278, 279 (1925) ; see also State v. Hayden, 171 La. 495, 503, 131 So. 575, 578 (1930) ("[C]orpus deliciti ... must be established in every prosecution and ... does not pertain to the guilt or innocence of the particular accused ...."). Thus, "it is well established that an accused party cannot be legally convicted on his own uncorroborated confession without proof that a crime has been committed by someone; in other words, without proof of the corpus delicti." State v. Freetime, 334 So.2d 207, 210 (La. 1976). Moreover, "[p]roof that defendant was the person who engaged in this unlawful conduct is of course necessary for a conviction, but it is not an element of the corpus delicti." Freetime, 334 So.2d at 210. The corpus delicti must be proven by evidence which the jury may reasonably accept as establishing that fact beyond a reasonable doubt. State v. Willie, 410 So.2d 1019, 1029 (La. 1982), appeal after remand, 436 So.2d 553 (La. 1983), cert, denied, 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 723 (1984) ; State v. Trahan, 2010-0554, p. 6 (La. App. 1st Cir. 10/29/10), 2010 WL 4272859 (unpublished), writ denied, 2010-2631 (La. 9/2/11), 68 So.3d 523. Additionally, "independent proof need not go to every element of the offense; and, it may be direct or circumstantial in nature." State v. Fisher, 2013-1152, p. 3 (La. App. 1st Cir. 6/6/14), 2014 WL 3765945 (unpublished). Once corpus delicti is independently established, however, a confession alone may be used to identify the defendant as the perpetrator of the crime.
*317 State v. Celestine, 452 So.2d 676, 678 (La. 1984) ; State v. Carter, 521 So.2d 553, 555 (La. App. 1st Cir. 1988).
Here, it is uncontroverted that the act underlying the instant prosecutions took place; namely N.D. fired a gun that he obtained from "someone" at the fleeing boys. N.D. was evidently found unarmed when found by responding officers, and the officers presumptively learned of J.S.'s involvement from him. Therefore, the crime of both the gun getting into the hands of N.D. to be fired at several people, and its subsequent secreting, was committed by "someone." See State v. Jordan, 2014- 32, p. 4 (La. App. 1st Cir. 10/13/15), 2015 WL 5968258 (unpublished), writ denied, 2015-2090 (La. 3/31/17), 217 So.3d 357 (where deceased victim was in possession of controlled substances prescribed to someone else, namely defendant, "the commission of a crime by someone relative to the receipt of the controlled dangerous substance was established."); State v. Duperon, 2012-0810, p. 4 (La. App. 1st Cir. 12/21/12), 2012 WL 6681847 (unpublished) (uncontroverted testimony that fire was intentionally set with a lighter was itself sufficient to allow jury to conclude fire occurred as a result of someone's criminal act). Evidence of this was established by the testimony of M.R., D.B., and S.B., prior to Det. Brogan taking the witness stand. State v. Carson, 336 So.2d 844, 847-48 (La. 1976) (before accused's confession may be introduced into evidence, State must first prove that a crime had been committed, by evidence which jury may reasonably accept as establishing that fact beyond reasonable doubt); see also State v. Olivier, 2006-2041, p. 2 (La. App. 1st Cir. 5/4/07), 2007 WL 1300818 (unpublished), writ denied, 2007-1550 (La. 5/2/08), 979 So.2d 1278 (the source of the testimony is irrelevant to the establishment of the corpus delicti, so long as the statements are not those of the accused). It is also a misstatement to claim that there was no independent corroborating information. Following the confession, the uncontested lawful search warrant executed on the home of J.S. revealed a firearm matching the one used in the shooting, and J.S. admitted to its use therein. State v. Connolly, 96-1680 (La. 7/1/97), 700 So.2d 810, 820 (purpose of the corroboration rule is to test the reliability of a confession and thereby prevent an erroneous conviction based solely on an untrue confession).
In sum, regarding J.S.'s argument as to a lack of corpus delicti, an offense was committed by "someone" in the process of arming N.D., and then another when "someone" hid the firearm after the shooting occurred. J.S.'s statement was a lawfully obtained confession, which was corroborated by evidence obtained in Det. Brogan's investigation and search warrant execution. The firearm was found in the house J.S. said he took it from, and there was nothing to indicate that N.D. had obtained it through any manner other than J.S. handing it to him. Regarding whether a crime had been committed by someone, even without J.S.'s inculpatory statement, the State satisfied its burden that a crime occurred. State v. Thibodeaux, 98-1673 (La. 9/8/99), 750 So.2d 916, 927, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000) (independent proof need not go to every element of the offense, and it may be either direct or circumstantial in nature). Once the corpus delicti was established, J.S.'s statement to police could be used as further evidence of his culpability. See Celestine, 452 So.2d at 678.
Accessory After the Fact
To prove a violation of La. R.S. 14:30(A)(3), the State must show the offender has a specific intent to kill or to inflict great bodily harm upon more than one person. Specific criminal intent is that *318 "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific criminal intent does not have to be proven as fact, but may be inferred from the circumstances and actions of the defendant. State v. Boyer, 406 So.2d 143, 150 (La. 1981). Pointing and firing a gun at someone while at close range supports a finding of specific intent to kill. La. R.S. 14:10 ; State v. Tassin, 536 So.2d 402, 411 (La. 1988), cert, denied, 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 159 (1989) ; State v. Neslo, 433 So.2d 73, 87 (La. 1983) ; State v. Noble, 425 So.2d 734, 736 (La. 1983) ; State v. Williams, 383 So.2d 369, 373 (La. 1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 828 (1981) (firing a gun at close range will support a finding of specific intent to kill under any standard of review); State v. Procell, 365 So.2d 484, 492 (La. 1978), cert. denied, 441 U.S. 944, 99 S.Ct. 2164, 60 L.Ed.2d 1046 (1979) (specific intent may be inferred from the act of pointing a gun at someone and firing at close range). Similarly, to prove attempted first degree murder, the State must show that the defendant committed an act with the specific intent to kill multiple victims, but did not ultimately succeed in killing them. La. R.S. 14:30 ; La. R.S. 14:27 ; cf. State v. Bishop, 2001-2548 (La. 1/14/03), 835 So.2d 434, 437 (attempted second degree murder requires specific intent to kill).
An accessory after the fact is any person, who, after the commission of a felony, harbors, conceals, or aids the offender, knowing or having reasonable ground to believe that he has committed the felony, and with the intent that he may avoid or escape from arrest, trial, conviction, or punishment. La. R.S. 14:25 ; State v. Chism, 436 So.2d 464, 467 (La. 1983). Moreover, it is "necessary to prove the guilt of the principal beyond a reasonable doubt..." Chism, 436 So.2d at 467 ; State v. Hopkins, 39,730 (La. App. 2d Cir. 8/17/05), 908 So.2d 1265, 1271, writ denied, 2005-2253 (La. 3/17/06), 925 So.2d 541 (to convict of accessory after the fact, the State must prove beyond a reasonable doubt that a felony was committed before the defendant rendered assistance to the felon, the defendant knew or had reasonable grounds to know that the felony was committed, and the defendant gave aid to the felon personally under circumstances indicating either he actively desired that the felon avoid or escape arrest, trial, conviction, or punishment or that he believed one of these consequences was substantially certain to result from his assistance); State v. Hall, 2003-0906 (La. App. 5th Cir. 5/26/04), 875 So.2d 996, 1003, writ denied sub nom., State v. Barnes, 2004-1875 (La. 12/10/04), 888 So.2d 834 (the statute requires only the general intent of the offender that the person who committed the felony will escape arrest, trial, conviction or punishment, and intent may be inferred or proven by circumstantial evidence). Finally, the failure to report a crime to law enforcement does not render one an accessory after the fact. State v. Jackson, 344 So.2d 961, 963 (La. 1977).
Here, it is uncontested that N.D. repeatedly fired the gun in the direction of M.R. and the others as they were standing in very close proximity. J.S. contends on appeal that the State failed to establish that N.D. was attempting to murder more than one person. As evidence, J.S. points to the "single line" of shell casings observed by Det. Brogan during his initial investigation. Notwithstanding this, the mere fact that N.D. fired in the direction of several fleeing victims who started at close range was sufficient for the State to establish beyond a reasonable *319 doubt an attempted first degree murder had been committed. See State v. Wilson, 93-0617 (La. App. 5th Cir. 1/25/94), 631 So.2d 1213, 1220 writ denied, 94-0476 (La. 11/4/94), 644 So.2d 1046 (statute defining first degree murder as killing of human being when defendant has specific intent to kill or to inflict great bodily harm upon more than one person does not require proof that defendant actually killed or inflicted great bodily harm upon second victim, only that he had specific intent to do so); see also State v. Tyler, 342 So.2d 574, 582 (La. 1977), cert. denied, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977) (fact only one shot fired by defendant did not require acquittal of charge of first degree murder based on La. R.S. 14:30(A)(3), on ground shooting into a crowd indiscriminately with intent to kill someone is considered an assault with intent to kill each of them); State v. Allen, 40,972 (La. App. 2d Cir. 5/17/06), 930 So.2d 1122, 1129, writ denied sub nom., State ex rel. Allen v. State, 2008-0507 (La. 11/26/08), 997 So.2d 543 (defendant's action in firing a sequence of gunshots into confined space where the owner and employee were standing implied that the defendant either intended to kill both women, or he intended to inflict great bodily harm). Moreover, it stands to reason that even assuming arguendo N.D. had only committed an attempted second degree murder, the felony requirement of La. R.S. 14:25 would still have been satisfied. Cf. State v. Rodrigue, 441 So.2d 1274, 1278 (La. App. 1st Cir. 1983), writ denied, 445 So.2d 436 (La. 1984) ( La. Code Crim. P. art. 821(E) permits appellate court to modify verdict and render conviction of responsive offense where court finds evidence supports conviction of responsive offense).
Additionally, the State alleged J.S. intended to aid N.D. by taking the firearm and hiding it after N.D. fired upon the rival boys. In the State's view, the act of taking the gun and hiding it was intended to aid N.D. avoid prosecution following his shooting of M.R. This is clearly the case here, where J.S. witnessed N.D. firing the gun at the boys, a felony, and immediately thereafter took the gun to return it to where it had originally been hidden. That J.S. did not tell law enforcement of the crime is not in itself dispositive of guilt, however, when coupled with the act of hiding the gun, it is evidence J.S. intended to conceal evidence of the crime from the authorities. See e.g. State v. Franks, 377 So.2d 1231, 1232 (La. 1979) (by loading truck with stolen goods and driving burglars in getaway vehicle from scene of burglary, defendant committed an overt act from which trier of fact could reasonably infer that defendant acted with specific intent to aid burglars and prevent their arrest).
Illegal Possession of a Firearm by a Juvenile
As an initial matter, La. R.S. 14:95.8(A) provides:
It is unlawful for any person who has not attained the age of seventeen years knowingly to possess any handgun on his person. Any person possessing any handgun in violation of this Section commits the offense of illegal possession of a handgun by a juvenile.
An adjudication of J.S. as delinquent for illegal possession of a handgun requires a finding that J.S. had actual, not merely constructive, possession of the gun. State in Interest of R.D. , 2012-0619 (La. App. 4th Cir. 10/3/12), 126 So.3d 504, 506, writ denied, 2012-2495 (La. 4/19/13), 111 So.3d 1030 ; State in Interest of D.V. , 2013-1283 (La. App. 4th Cir. 5/7/14), 144 So.3d 1097, 1101, writ denied, 2014-1105 (La. 6/11/14), 141 So.3d 268. Given J.S.'s statement to law enforcement, as well as the corroborating *320 evidence of the gun used in the shooting being found in the residence where J.S. said he took it, the State established beyond a reasonable doubt that J.S., not yet seventeen at the time of the offense, actually possessed the gun both before and after N.D. fired it at the retreating boys.
The trier of fact, in this case, the juvenile court, is charged with making credibility determinations. Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the fact finder. State ex rel. T.C., 2009-1669 (La. App. 4th Cir. 2/16/11), 60 So.3d 1260, 1263. Moreover, conflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency. Id.S ee Tibbs v. Florida, 457 U.S. 31, 46, 102 S.Ct. 2211, 2220-21, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. T.C., 60 So.3d at 1263. A trier of fact's determination as to the credibility of a witness is a question of fact entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence. Id.See State v. Vessell, 450 So.2d 938, 943 (La. 1984). Given the admissible evidence corroborating J.S.'s statement properly presented by the State, in a light most favorable to the prosecution, the State proved J.S. delinquent of both offenses beyond a reasonable doubt.
ASSIGNMENT OF ERROR # 3: EXCESSIVE SENTENCE
In his final assignment of error, J.S. claims he was sentenced excessively by the juvenile court. Though La. R.S. 14:95.8(B)(1), illegal possession of a firearm by a juvenile, provides that on a first conviction, an offender shall be fined not more than $100.00 and imprisoned not less than ninety days nor more than six months, the minute extracts indicated that J.S. was to serve five years on count 2, to run concurrently with his sentence on count 1, for accessory after the fact in the commission of attempted first degree murder. That said, on the signed judgment of disposition, the juvenile court corrected the term on count 2 to six months. In the transcript, the juvenile court stated that "The Court commits [J.S.] to the Department of Public Safety and Corrections and the Office of Juvenile Justice for a period of five years" without specifying individual sentences for each offense. The State argues there is no need for correction where the judgment of disposition is correct, and the transcript only shows the juvenile court ordering a commitment of five years on the other charge.
If there is a discrepancy between the minutes and the transcript, the transcript must prevail. State v. Lynch, 441 So.2d 732, 734 (La. 1983) ; State in Interest of N.H., 2008-2464 (La. App. 1st Cir. 3/27/09), 11 So.3d 27, 29, n.2. In this case, the minutes reflect an illegal sentence on count 2, the transcript reflects no sentence on count 2, and the judgment/commitment order reflects a legal sentence on count 2. Accordingly, there is no express conflict between the written disposition and the transcript that would warrant a reversal or a remand for clarification. See State in Interest of A.D., 2016-0439, p. 12 (La. App. 4th Cir. 9/28/16), 2016 WL 5416351 (unpublished).
ADJUDICATIONS AND DISPOSITIONS AFFIRMED.

Pursuant to Rules 5-1(a) and 5 -2 of the Uniform Rules-Courts of Appeal, the initials of the juveniles involved in this matter will be used instead of their names.

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In the absence of specific procedures provided by the Louisiana Children's Code, the court shall proceed in accordance with the Louisiana Code of Criminal Procedure. See La. Ch. Code art. 803.